(No. 15042.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENNY JARVIS, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*when evidence of other offenses is admissible.* Evidence of other offenses is admissible when it forms a part of the *res gestæ* or shows or tends to show a particular intent or motive in the defendant's connection with the crime, provided the time which has elapsed between the crime charged and the offense concerning which the testimony is offered is not too remote.

2. SAME—*what acts or declarations are part of res gestæ.* The *res gestæ* constitutes the subject matter of the thing done and includes those acts or declarations which are contemporaneous with the commission of the crime or so connected with it.as to illustrate its character, and whether such acts or declarations are an immediate and important accompaniment of the act charged is determined not only by the closeness of time but by the causal relation, as the limits of time which cover the *res gestæ* cannot be arbitrarily fixed.

3. SAME—*when evidence of subsequent offense is not admissible.* Where self-defense is set up in a trial for murder, evidence that the defendant, from three to fifteen minutes after the affray in which he shot the deceased, went to a drug store where the deceased had been carried after the shooting and assaulted some of the bystanders with the butt of his revolver is not admissible as a part of the *res gestæ* or otherwise, and its admission is prejudicial error.

4. SAME—*when instructions are erroneous in ignoring self-defense.* In a trial for murder, an instruction attempting to define the term "malice aforethought" and one defining voluntary manslaughter in the language of the statute are erroneous if they ignore the plea of self-defense relied upon by the defendant.

5. SAME—*instructions should be based on the evidence and not be argumentative.* Instructions which are merely argumentative or which are not based upon the evidence should not be given.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. A. E. SOMERS, Judge, presiding.

NEELY, GALLIMORE & COOK, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, DELOS DUTY, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted in the circuit court of Williamson county upon the charge of murdering Floyd James. On the second trial of the case as to him he was found guilty of manslaughter. The indictment was returned originally against plaintiff in error and his father, Henry Jarvis. On the first trial his father was acquitted and the jury disagreed as to the guilt of plaintiff in error. Another trial was had with the result here indicated. The plaintiff in error's plea was self-defense. The plaintiff in error brings the record here for review, complaining that the verdict is contrary to the weight of the evidence, and that the court erred in the admission of testimony and in instructions to the jury.

On the night of June 14, 1919, Guy James, a brother of the deceased, Floyd James, together with a number of other young men, were gathered on the streets of the village of Hurst, in said county. Most of them were in an intoxicated condition. Guy James, who had been lying asleep on the sidewalk in front of a pool-room, was aroused a little after eleven o'clock, and he, with Joe Russell and Leonard James, walked across the street into a block or square devoted to public use and called the "park." Guy began to shout. Henry Jarvis, father of the plaintiff in error, who was village marshal, called to him from the other side of the street adjacent, telling him to stop the noise he was making and go home. This admonition appears not to have been effective, and the marshal crossed the street and after some words undertook to arrest Guy, who resisted. The marshal thereupon called the plaintiff in error, his son, to come over and assist him in placing Guy under arrest and putting him in the calaboose or town jail. The jail was

about 300 feet west of the point where the arrest was made
and on the west side of the square. When the marshal
started toward the jail with Guy he was followed by a num-
ber of young men who had been Guy's associates and by
the plaintiff in error. Upon arriving at the jail Guy resisted
attempts to put him inside, and the deceased, who had not
been in the party, came upon the scene and demanded to
know what was going on. While the evidence is in sharp
conflict as to what then occurred, it is evident that a fight
or commotion took place, in which the plaintiff in error
fired his revolver two or three times, with the result that
the deceased received mortal wounds, of which he died a
short time thereafter.

The testimony of the State's witnesses tends to show
that the plaintiff in error fired without justification; that
he was not being assaulted at the time and that the killing
was entirely unprovoked. The plaintiff in error's testimony,
and that of his father, was to the effect that one of the
members of the crowd had drawn a knife and was threat-
ening plaintiff in error, and that deceased came upon the
scene wanting to know, by the use of rough language, what
was going on, and that when told by the marshal that he
was putting Guy in jail, he immediately attacked the mar-
shal, and that plaintiff in error came between his father and
the deceased; that thereupon the deceased struck him and
knocked him down, and while on the ground he fired two
shots and the deceased fell. Some time thereafter the de-
ceased was carried over to a drug store about 300 feet east
of the place of the shooting and laid upon the sidewalk in
a dying condition. He died while being removed to a house
near by. As we have indicated, and as counsel for the State
say in their brief, the evidence is in sharp conflict. It is
therefore required that the record be free from prejudicial
error.

The State offered witnesses to prove that after the de-
ceased had been carried over to the drug store and laid on

the sidewalk, and while a doctor was examining him, the plaintiff in error came up, and, swinging his revolver, demanded that the crowd stand back; that Otto Parrent and Charlie Counts were stooping over the body of the deceased, and that plaintiff in error struck one of them over the head with the pistol and kicked the other in the face. This was a separate and distinct offense which was in no way connected with the commission of the crime charged but occurred some time thereafter. One of the witnesses testified that he lived a block away from the drug store; that he was in bed when he heard the shooting; that he arose, dressed and went down to the drug store, and that the body was brought there after his arrival. He testified, also, as to what occurred between plaintiff in error and Counts and Parrent. Another witness testified that he was on his porch at home, six or seven hundred yards from the jail, when the shots were fired; that he thereafter went to the drug store, and that after arriving there the deceased was carried over and laid upon the sidewalk, and that the difficulty with plaintiff in error took place thereafter. The testimony of the witnesses as to the length of time which transpired between the shooting and the occurrence which happened at the drug store ranges from three to fifteen minutes. The distance from the jail, where the shooting occurred, to the drug store was 300 feet. There was no causal connection between the two acts. Evidence of other offenses is admissible when it forms a part of the *res gestæ* or shows or tends to show a particular intent or motive in the defendant's connection with the crime, provided the time which has elapsed between the crime charged and the offense concerning which the testimony is offered is not too remote. (*Farris v. People,* 129 Ill. 521; *Bird v. United States,* 180 U. S. 356; 21 Cyc. 944.) The test as to whether or not a declaration or act is part of the *res gestæ* of the crime charged is whether the circumstances and declarations offered in proof were contemporaneous with the commission of the

crime and so connected with it as to illustrate its character. *Res gestæ* has been defined as the subject matter of the thing done. Acts and words which are so closely connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, may be said to be a part of the *res gestæ*. Evidence of declarations and acts which are an immediate and important accompaniment to the act charged are admissible as a part of the *res gestæ*. Whether or not such declarations or acts are immediate is tested, not by the closeness of time but by causal relation. While limits of time within which the *res gestæ* occurrences are a part cannot be arbitrarily fixed, for the reason that so long as the main transaction continues deeds emanating from it become a part of it, yet the *res gestæ* of a transaction is that which is done during the progress of it, or so nearly upon the actual occurrence as to be treated as contemporaneous with it. Such acts must have so near a causal connection with the main occurrence as to be free from suspicion that they emanate from some occurrence either prior or subsequent to the main transaction. (*Chicago West Division Railway Co.* v. *Becker,* 128 Ill. 545; *State* v. *Lenihan,* 88 Iowa, 670; *Hall* v. *State,* 48 Ga. 607; Wharton on Evidence, sec. 262.) There was no immediate connection, either causal or in point of time, between the later assault and the shooting. Subjected to the tests referred to, it will be seen that the evidence admitted concerning the later assault was not competent as a part of the *res gestæ,* and since it occurred some time after and was in nowise a part of the shooting or the circumstances causing the killing, evidence of it cannot be held competent as in any way showing a motive for the offense charged. The admission of this testimony was palpable error and was highly prejudicial to plaintiff in error.

Plaintiff in error complains of numerous instructions. Instruction No. 2 is objected to for the reason that it ignores the defense of self-defense. This instruction is, in

part, section 144 of the Criminal Code, defining voluntary manslaughter. In *People* v. *Davis,* 300 Ill. 226, a similar instruction was held erroneous for the reason that the section refers only to cases of voluntary manslaughter, where the killing is the result of sudden impulse or passion supposed to be irresistible, and that it has no application to a plea of self-defense.

Instruction No. 7 is objected to as argumentative. It is open to the objection urged. It is a dissertation on what a police officer may or may not do under different circumstances. Parts of it were not based upon evidence in the State's attorney's view of the law of self-defense and should not have been given.

Instruction No. 9 is also erroneous as ignoring the defense of self-defense. It tells the jury "that the words 'malice aforethought' do not necessarily imply the lapse of a considerable time between the formation of the malicious intent to take life and the actual execution of that intent. Whether the design to effect death was formed on the instant or had been previously entertained is immaterial, for a felonious and malicious killing, if proven by the evidence beyond a reasonable doubt, in either case is murder under the laws of this State." This same instruction was condemned in *People* v. *Penman,* 271 Ill. 82, and *Marzen* v. *People,* 173 id. 43.

People's instruction No. 24 is erroneous as not based on any evidence in the case. It told the jury that "the rule of law in this State is that no words, however provoking or insulting can amount to that considerable provocation which the law recognizes as necessary to reduce a killing from murder to manslaughter. And in this case, although you may believe from the evidence that the deceased at the time of the killing in question, used insulting words toward the defendant, or toward the father of the defendant at the time in question, yet such fact, if it is a fact and shown by the

evidence would not justify the defendant, Benny Jarvis, in making an assault on the deceased, Floyd James, with a deadly weapon, if the evidence shows he did assault him with a deadly weapon, and is so shown by the evidence beyond a reasonable doubt, and caused by means of insulting words toward the defendant." There is no evidence that the shooting was in any way caused by insulting words on the part of the deceased toward the plaintiff in error or his father or that the deceased used any such words.

Instruction No. 25 told the jury that if they believed, beyond a reasonable doubt, that one of the James boys was in a public place drunk, and the officer arrested him, such officer had no right to assault him with a club; that if he did so, the person had a right to grab at the club to prevent himself from being assaulted by the officer. It then proceeds with a dissertation on the rights of an officer and of citizens. This instruction was not only argumentative but had no bearing upon the commission of the crime. The party arrested was not the deceased and the arrest was not made by the plaintiff in error. Neither the deceased nor the plaintiff in error was present at the time the arrest was made. The father of plaintiff in error, who made the arrest, was not on trial, having been acquitted on a former hearing, and plaintiff in error had nothing to do with the matter of his father striking at Guy James with his club. This instruction had no bearing whatever on the commission of the crime charged and is wholly out of place in the record and tended only to justify the act of Guy James in resisting arrest.

For the errors herein indicated the judgment is reversed and the cause remanded.    *Reversed and remanded.*