(No. 16221.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLYDE DUNCAN, Plaintiff in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*when instruction as to malice aforethought is erroneous in ignoring self-defense.* Where a defendant has set up self-defense in a murder trial it is error to instruct the jury that malice aforethought "need be only such deliberation and thought as enables a person to appreciate and understand, at the time the act was committed, the nature of his act and its probable results," as a man may in self-defense intentionally and deliberately use a deadly weapon, intending to kill his opponent, without being guilty of any crime.

2. SAME—*setting up self-defense does not put burden of proof on the defendant—instruction.* In every case the burden is on the prosecution to prove the guilt of the defendant, and all that is necessary to evidence of self-defense is that it shall be sufficient to raise a reasonable doubt of guilt; and it is error to instruct the jury that the burden of showing any fact is on the defendant.

3. SAME—*what belief of danger is necessary to justify self-defense.* Actual danger is not necessary to justify self-defense, but the question is whether the facts, as they appeared to the defendant at the time of the commission of the homicide and under the conditions there present, were such as to indicate to him, as a reasonable person, an intent to take his life or do him great bodily injury.

4. SAME—*defendant's right to self-defense is based upon his own belief in danger, acting as a reasonable person.* In order to avail himself of the right of self-defense it is not necessary that the defendant should have acted as an ordinarily courageous man would have acted under the circumstances, but it is sufficient if the circumstances were sufficient to excite the fears of a reasonable person and the defendant really acted under the influence of those fears.

5. SAME—*an instruction stating abstract proposition of law and ignoring defense should not be given.* An instruction in a murder trial that "no provocation by words, only, however opprobrious, will mitigate an intentional killing so as to reduce the killing to manslaughter," although correct as an abstract proposition, should not be given where the defendant has set up self-defense, as the

instruction ignores the defense, takes from the jury the effect of any evidence of threats against the defendant, and may be understood by the jury as assuming that the defendant did not act in self-defense.

FARMER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

C. E. McNEMAR, and W. S. JEWELL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ERNEST J. GALBRAITH, State's Attorney, EDWARD C. FITCH, and FRANCIS C. VONACHEN, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Clyde Duncan was convicted of murder and prosecutes a writ of error to reverse the judgment.

Duncan kept a saloon at the corner of Washington and Bridge streets, in the city of Peoria, in which the homicide occurred on Friday evening, September 28, 1923, about 9:30 o'clock. About that time the deceased, John Grant Powell, in company with two associates, entered the saloon and immediately began cursing and abusing Duncan, who was standing behind the bar with his bar-keeper, William McKinney. Duncan answered in kind and volleys of profanity and obscenity were exchanged between the two participants. It appears that some of the frequenters of the place who were witnesses at the trial regarded the exchange of ribaldry as jocular in its character, but if there was anything jocose about it the quality soon changed. Powell wanted to buy a drink for the house, but Duncan refused to sell him a drink and ordered him out of the place, telling him to go out and stay out. Powell told Duncan if he would come out from behind the bar he would whip him in his own saloon. Powell's two companions took hold of him and en-

deavored to induce him to leave. They got him as far as the door, when he broke away from them and went back to the bar. In the meantime Duncan, while these events were occurring, had turned around and taken from a drawer by the cash register, immediately behind the bar, a revolver, which he held in his hand hanging at his side. When Powell broke loose from his companions at the door he came back in front of the bar opposite Duncan, and it is the claim of the prosecution that Duncan without any further provocation raised the revolver and fired point blank at Powell's head, sending the bullet through his brain. Powell fell back on the floor and died in a few minutes. It is the claim of the defense that when Powell came to the bar he commenced pounding on it with his right hand, cursing Duncan and challenging him to fight; that he had his left hand in his pocket and drew it out and brought it up over the bar. The defendant claims that he saw a flash coming over the bar, and believing that Powell was about to shoot him, he shot Powell in self-defense.

There were a number of persons in the saloon at the time,—nine or ten,—who testified, giving their respective versions of the occurrence. There is a great discrepancy in their testimony, hardly to be accounted for by honest differences of recollection. It is certain that Powell entered the saloon and conducted himself in the disorderly manner described; that he threatened to whip Duncan, and after being induced to go as far as the door, returned to the bar opposite Duncan. The question involved in the greatest uncertainty in the evidence is the conduct of the two men at the precise time of the shooting and for a moment before. Of all the nine or ten witnesses in the room none seem, according to the testimony, to have seen the actual shooting or what occurred between the two men at the precise time or an instant before. If Powell's actions at that time were such as to justify Duncan in believing that Powell was about to attack him with a knife or revolver he was justified in

shooting Powell. The police were called directly after the occurrence and arrived at the saloon within five minutes. Powell was lying on his back on the floor in front of the bar, with his feet within a foot or two of the bar, and upon the floor beside him, within a few inches of his left hand, was lying an open clasp-knife. Nobody testified to seeing him have this knife in his hand except McKinney, who testified that when Powell came back to the bar he had his left hand down at his side, and that while he was pounding on the bar with his right hand he brought his left hand above the bar with the knife in it and struck at Duncan, missing his neck three or four inches. Everybody went out of the room immediately after the shooting, leaving Duncan and McKinney there alone, and they were arrested there by the police upon their arrival within five minutes. It is claimed by the prosecution that Duncan placed the knife beside the body. There is no evidence of it.

The case was tried by the State on the theory that Powell was not shot by Duncan in self-defense, but that because Powell had threatened to whip Duncan in his own saloon Duncan stood with the revolver in his hand waiting several minutes for an opportunity to shoot Powell, who was unarmed; that he got the revolver for that purpose and that he killed Powell with premeditated malice. It is claimed by the prosecution that when Powell came to the saloon he was apparently in a jovial mood, and that the exchange of rough language was merely playful banter up to the time when Powell stated that if Duncan would come out from behind the bar Powell would whip him in his own saloon and the defendant ordered Powell to get out of the place and stay out. There was also evidence of Powell, together with his two companions, being in other places of like resort in that same evening before coming to Duncan's place, and threatening that he was going to Duncan's place, that he was going to get Duncan, and if he couldn't whip him he was going to cut his guts out. A witness testified that at one

place he exhibited the knife which was afterward found beside his body on the floor of Duncan's saloon, or one like it.

There was serious conflict in the testimony. While there were a number of persons in the saloon, their testimony as to the occurrences of the few minutes after Powell came in before his death differs so much in details as to be difficult, if not impossible, of reconcilement. In such a condition it is essential, in order to sustain the verdict, that the jury should have been properly instructed and that no substantial error should have occurred on the trial. The defense was self-defense. The questions of law in the case were not intricate or complex and did not require a great volume of instructions as to the law, but twenty-two instructions on behalf of the People and thirty-eight on behalf of the defendant were given, all occupying twenty-eight printed pages of the abstract.

The fifth, ninth and eleventh instructions are complained of. The fifth instruction is section 148 of the Criminal Code, and except the opening clause, "justifiable homicide is the killing of a human being in necessary self-defense," has no application to the case and should not have been given. It could only confuse the jury and distract their minds to apply it to the case. *People* v. *Davis,* 300 Ill. 226.

The first instruction defined murder as the unlawful killing of a human being in the peace of the people, with malice aforethought, either expressed or implied. The ninth instruction was as follows:

"The jury are instructed that the deliberate intention, called malice aforethought, need be only such deliberation and thought as enables a person to appreciate and understand, at the time the act was committed, the nature of his act and its probable results."

This instruction practically eliminated the plaintiff in error's defense. After the jury had been told that murder is an unlawful killing with malice aforethought, this instruction informed them that malice aforethought need be only

such deliberation and thought as enable a person to appreciate and understand, at the time the act was committed, the nature of the act and its probable results; that is, if the plaintiff in error, when he shot, understood the nature of the act and that it would probably kill Powell, malice aforethought was established and the killing was murder. In self-defense a man may intentionally and deliberately use a deadly weapon, intending to kill his opponent, without being guilty of murder or manslaughter or any other crime, because his act is justified. *People* v. *Davis, supra; People* v. *Jarvis,* 306 Ill. 611; *People* v. *Penman,* 271 id. 82.

Instruction No. 11 attempts to inform the jury what will constitute a justification of the killing under the doctrine of self-defense in these words: "It must appear from the evidence that at the time of said killing the defendant was in such apparent danger that a reasonable person under the same circumstances would have been induced to believe that it was necessary or apparently necessary to kill John Grant Powell in order to save his own life or to prevent his receiving great bodily harm." The burden of proof and the measure of proof are the same whether the defense is self-defense or any other, and in any case the burden is on the prosecution to prove the guilt of the defendant and the defendant is not required to prove anything. It is sufficient if the evidence as to self-defense leaves a reasonable doubt as to the defendant's guilt. It is erroneous to instruct the jury that the burden of showing any fact is on the defendant. Actual danger is not necessary to justify self-defense, but the question is whether the facts as they appeared to the defendant at the time and under the conditions there present were such as to indicate to him, as a reasonable person, an intent to take his life or do him great bodily injury. This was the doctrine announced in *Campbell* v. *People,* 16 Ill. 17, in which it was said: "Men, when threatened with danger, are obliged to judge from appearances, and determine by the actual state of things, from the circumstances surround-

ing them, at least as much as if placed in other and less exciting positions; and it would be monstrous to say that if they act from real and honest conviction, induced by reasonable evidence, they shall be held responsible criminally for a mistake in the extent of the actual danger, where other reasonable and judicious men would have been alike mistaken." This case has been uniformly approved and followed in many cases. The instruction is in error also in stating that it must appear that the danger to the defendant was such that a reasonable person, under the same circumstances, would have been induced to believe, etc. The jury are not to determine what a reasonable man would have been induced to believe, but, What did the defendant at the time and under the circumstances, acting as a reasonable man, believe? What any reasonable man may do under given circumstances is not always possible to determine. Man's reason does not always operate to produce the same result under the same circumstances. The question in cases of this character concerns the particular man, and the circumstances must be viewed from the standpoint of the defendant alone, particularly under circumstances of great excitement. In order to avail himself of the right of self-defense it is not necessary that the defendant should have acted as a man of ordinary judgment and courage or as an ordinarily courageous man. (*People* v. *McGinnis,* 234 Ill. 68.) It is sufficient if the circumstances were sufficient to excite the fears of a reasonable person and the defendant really acted under the influence of those fears.

The twelfth instruction was:

"No provocation by words only, however opprobrious, will mitigate an intentional killing so as to reduce the killing to manslaughter."

It was an abstract proposition of law and had no application to a plea of self-defense. Its tendency was to lead the jury to disregard the effect of Powell's threats to whip Duncan in leading the latter to believe that Powell was

about to assault him and that his life was in danger. It is inconsistent with the language of the court in discussing the facts in *Silgar* v. *People*, 107 Ill. 563, where it is said: "For aught that appears the language of the deceased may have been of the most offensive and provoking character, or it may, as testified to by the accused, have consisted of threats against the prisoner's life, which, in view of the existing relations between the parties, may have well aroused in the mind of the accused the most serious apprehensions of danger; and if the taking of the life of the deceased was induced by either of these causes and was not done in wantonness or from a mere spirit of revenge, it is clear the killing would not be murder." The instruction calls attention improperly to a single feature of the case as being insufficient to establish a defense or reduce the grade of the crime. It is equivalent to an instruction that mere threats or words cannot reduce an intentional killing to manslaughter, which, as a proposition of law, may be true enough. The object of instructing the jury, however, is not to educate the jurors in abstract legal principles, but to inform them of the pertinent rules of law in their application to the particular case. The contention of the defendant was not that there was a provocation by words, only, but that threatening words were accompanied by action indicating a hostile intent dangerous to the defendant's life. The words should not be considered by themselves but must be considered in connection with the actions to which they gave character. The instruction considers the words, alone. It entirely ignores the plea of self-defense. It assumes that an intentional killing must be murder or manslaughter, contrary to the principle that a man may intentionally and deliberately kill his opponent in self-defense and not be guilty of either murder or manslaughter. No attempt was made to apply the abstract proposition of law to the facts in the case, and the instruction is capable of being understood by the jury as assuming that the defendant did not act in self-

315–8

defense and that provocation by words, only, was proved, and that therefore the intentional killing of Powell was murder. It was error to give an instruction capable of being so understood. *People* v. *Jacobs,* 243 Ill. 580; *People* v. *Bissett,* 246 id. 516.

On the examination of the plaintiff in error he testified that Powell was in his place on Sunday night or Monday night before the Friday evening when he was killed; that he created a disturbance there and that the plaintiff in error ordered him out of the place and told him to get out and stay out; that he didn't allow any of that kind of stuff in his place. As Powell went out, the plaintiff in error testified, he said, "I will get out this time, but the next time I come in here I am going to get you." Counsel for the plaintiff in error asked him to state what Powell did that constituted a disturbance, but an objection made to the question was sustained. Counsel for the plaintiff in error say in their brief that assuming that the deceased struck a patron in the defendant's place of business and knocked him down for the simple reason that the patron refused to buy the deceased a drink at deceased's request, this would show to the jury that the defendant was clearly within his rights in ordering the deceased to leave his place; that the defense was allowed to show such facts at a previous trial and should have been allowed to do so at this trial, because this conduct had an important bearing on what happened the next Friday night, showing that Powell was a violent and dangerous man, and, taken in connection with the testimony which showed him to have been a blacksmith and horse-shoer and a man of great physical strength, it would have a tendency to lead the defendant to believe that the deceased was a man who would wantonly and recklessly attack a person who failed to comply with his wishes. The record does not show that these things occurred on a previous trial, and even if they did, it cannot be assumed that the court had knowledge of all that occurred on such trial, and in the

absence of a statement of what it was expected to prove by the answer to the question, the court committed no error in sustaining the objection to it.

Complaint is made of the attitude of the court toward the defense during the trial and of the conduct of the State's attorney, but since the judgment must be reversed for the error in the instructions, which failed to give to the plaintiff in error the benefit of his plea of self-defense, we do not regard it as necessary to comment on these matters.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.* ·

Mr. JUSTICE FARMER, dissenting.