(No. 21181.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY ELMER ETZEL, Plaintiff in Error.

*Opinion filed April 23, 1932.*

JONES, J., dissenting.

D. H. MUDGE, and HAROLD J. BANDY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ALVIN C. BOHM, State's Attorney, and J. J. NEIGER, (M. L. WELCH, and EMERY J. SMITH, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause is here on writ of error to review the judgment of the circuit court of Madison county finding plaintiff in error guilty of murder and sentencing him to the penitentiary for a term of fifty years. The crime charged is the killing of Elmer Baltz, cashier of the First National Bank of Madison, Illinois, on March 16, 1928, while the latter was conveying a package of money from the Madison post-office to the bank. Plaintiff in error was jointly indicted with one Carl Fiorita and both were found guilty.

Fiorita prosecuted a writ of error to review the judgment against him, and that judgment was reversed by this court and the cause remanded. (*People* v. *Fiorita,* 339 Ill. 78.) This is the same record and arises on the same trial.

The contentions of plaintiff in error are that the evidence does not prove him guilty beyond a reasonable doubt, and that error was committed in admitting, over objection, the testimony of one Thomas M. Lewis, who was placed on the stand as an expert in ballistics. On the former review of this record it was held the evidence did not prove Fiorita guilty beyond all reasonable doubt and that it was error to admit the testimony of Lewis. The record as to this plaintiff in error differs principally as to the questions of identification and alibi. The statement of the evidence other than of identification and alibi of this plaintiff in error is fully set forth in the *Fiorita case* and need not be repeated here. The testimony as to identification includes that of the following witnesses for the People:

Grace Wining testified that she was an employee at the Glick department store, near the place where the shooting occurred, but did not identify either of the defendants.

Catherine Leyden, also an employee of the Glick store, testified as to having seen in front of the store the automobile in which the murderers were riding. She stated that it remained there, facing south, immediately in front of the store, for about twenty minutes; that there were four well-dressed men in it, with light overcoats and hats to match. She said that one of the men looked like Fiorita, but she did not identify either of the defendants.

The witness John Mowery testified he was standing on the street in front of Glick's store when the shooting took place, across the street and a little south of where he stood. He identified both Fiorita and plaintiff in error here, but this court said concerning his evidence: "The conviction of plaintiff in error in this case rests upon the identification of three witnesses, two of whom merely testified that the

plaintiff in error looked like one of the men in the Buick car. Mowery, the only witness who made a positive identification, was standing more than 200 feet from the scene of the shooting. The robbers, facing Baltz, of necessity had their backs toward the witness all or a greater portion of the time. * * * Mowery was unable to give even a general description of how the men were dressed. He testified the shooting came as a surprise to him, and that he remained where he was in a dazed condition for some time after the robbers had gone. Although he purported to make a positive identification of plaintiff in error it is obvious that his opportunity for observation was very limited, and, in view of his uncertainty and vagueness as to other matters about which he attempted to testify, we think his identification is not entitled to great weight—at least it is not convincing beyond a reasonable doubt."

Nellie Hood, also for the State, testified that at the time of the shooting she stood at the northwest corner of Second street and Madison avenue; that she saw a blue Buick car come south on Madison avenue to the intersection of Madison avenue and Second street, and that the car made a U-turn at the intersection and headed north on Madison avenue a part of a block and turned northeast in front of another car and stopped it, and that a man stepped from the side of the car and shot Elmer Baltz as he took a few steps toward him. She testified: "I see one of these men now. He is Henry Elmer Etzel. He shot Baltz." She testified that she was across the street and about 40 feet south of where the shooting took place. This witness' testimony as to the occurrence is at variance with all the other evidence in the record, which shows that the car driven by the murderers was headed south and stood for some time in front of Glick's store, which was a block north of where this witness stood; that it was the car in which Baltz was riding that had made the U-turn at the corner of Second street and Madison avenue and started to return north,

when the other car came in a southeasterly direction across the street from Glick's store and stopped the Baltz car on the right side of Madison avenue.

The People showed the arrest of plaintiff in error, Etzel, in St. Louis, and that at the time of his arrest he was driving a Buick coupe bearing an Illinois license. Otto Etzel, brother of plaintiff in error, testified that the latter and he worked in the meat department of the Star Packing Company in St. Louis and that plaintiff in error was at his work in that store during the entire day of March 16, the date of the murder. Elmer Freiner, the proprietor of the Star Packing Company in St. Louis, a brother-in-law, and Mrs. Freiner, a sister of plaintiff in error, also testified to the presence of plaintiff in error in Freiner's store all day March 16. A. E. Dutton testified that he was in the laundry business; that he did business with the Star Packing Company; that on the 16th day of March he delivered laundry at the store of the Star Packing Company; that he arrived at that place at about 9:25 or a quarter to ten on the morning of March 16 and remained there probably fifteen minutes and that during all that time plaintiff in error was there. Plaintiff in error did not take the stand.

The People, in rebuttal, placed on the witness stand one George Shyrock, who testified that he had known plaintiff in error for about two years and that he saw him at the corner of Second street and Madison avenue, Madison, Illinois, about 9:20 or 9:25 on the morning of March 16 in a Buick sedan, and that there were other persons in the automobile with him and he did not speak to him. One Irving W. Pfieffer testified, in rebuttal, that he lived in St. Louis and was employed with Otto Etzel at the Star Packing Company; that he worked there from about January 1, 1928, up to the time of the trial; that he went to work at 7:00 in the morning and left about 6:30 or 7:00 o'clock in the evening; that he did not know plaintiff in error and never saw him at

the store and that he did not work there at any time between January 1 and May 16, 1928, that the witness knew of, and that he had never seen plaintiff in error until he met him in the jail at Edwardsville. This witness stated that he worked as a butcher's helper with Otto Etzel in the meat department.

The burden rested with the People to prove the plaintiff in error guilty beyond a reasonable doubt, and in cases where the evidence is close, as it is in this case, on identification, it is necessary that the record be free from error. The evidence on identification was fully discussed in the *Fiorita case* and need not be repeated here. The only difference in the testimony of identification as applied to plaintiff in error here is the testimony of Nellie Hood, which is affected by her conflicting evidence as to what occurred.

The People argue that the admission of the incompetent evidence of Lewis could not have prejudicially affected the trial of plaintiff in error, Etzel, for the reason that it had to do with proof that the bullet which killed Baltz had been fired from the revolver later found in the possession of Fiorita. As we have seen, there is testimony identifying both Fiorita and Etzel as present and participating in the crime. Therefore, incompetent evidence tending to establish that Fiorita was the owner of the gun used in the shooting cannot be differentiated in its effect on the jury, and it cannot be said that the error affected Fiorita, only. We are of the opinion here, as in the *Fiorita case,* that plaintiff in error is entitled to a new trial.

The judgment of the circuit court is therefore reversed and the cause remanded. *Reversed and remanded.*

Mr. JUSTICE JONES, dissenting.