(No. 23159.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANGELO BORELLA *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1935.*

HAROLD L. LEVY, and EDWARD M. KEATING, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Angelo Borella, Joseph Cantello and Sam Lucas, deputy sheriffs of Cook county, were convicted in the criminal court of that county of bribery. Borella and Cantello have prosecuted a writ of error.

The evidence shows that on the night of July 7, 1933, the Great Atlantic and Pacific Tea Company was transporting a large quantity of butter in cartons from Chicago to Detroit. While the truck was en route near Elkhart, Indiana, it was stopped by three men, who took the truck and its contents back to Chicago, where they unloaded the butter and afterwards sold it to John F. Kliner, a commission merchant. A few days later half of the butter was disposed of to Joseph Levin. The purchasers paid the thieves about $1800, which was much less than the market price of the butter. The record leaves no doubt that the butter was stolen and that Kliner and Levin purchased it with full knowledge of that fact.

Kliner and Levin testified that the defendants came to their respective places of business and found quantities of the stolen butter, after which the defendants proposed to Kliner that they would conceal the crime and make no arrests for a specified sum of money, and that after certain negotiations were had between the parties the bribe was paid. The defendants denied they had knowledge of any stolen butter being in the possession of Kliner and Levin or of the commission of any crime by them. They denied the receipt of any money from either Kliner or Levin. They produced proof by apparently credible witnesses of an alibi and of their good reputation for honesty and integrity. The proof against them was furnished

almost entirely by admitted criminals. In view of our ultimate conclusions in this case we refrain from any expression of opinion concerning the weight of the evidence, as the cause may be re-tried.

Both at common law and by statute bribery is the giving or receiving anything of value or any valuable service intended to influence anyone in the discharge of a legal duty. (*People* v. *Peters*, 265 Ill. 122.) The charge in this case is that the defendants received money from Kliner in consideration of their promise to refrain from arresting him for the crime of receiving stolen property. It was necessary for the People to prove, beyond a reasonable doubt, that the property was stolen, that Kliner received it knowing it was stolen, that the officers knew of Kliner's guilt, and that they were charged with the duty of arresting him and refrained from the performance of that duty in consideration of a bribe.

Proof of the theft of the butter by someone other than Kliner was indispensable, and the general rule that evidence of offenses not specifically charged in the indictment cannot be received in evidence has no application in a case of this character. The fact that the property was stolen must be proved, and while considerable latitude should be allowed the prosecution in presenting proof of the fact, still abuse of the right is not to be permitted, particularly when the effect is clearly prejudicial to the defendants.

The People proved, as they had a right to, that the butter was stolen, returned to Chicago and was afterwards sold by the thieves to Kliner. Clayton Dufort, the driver of the truck, in the employ of the Great Atlantic and Pacific Tea Company, testified to the theft and that three men perpetrated it. He was then questioned at length concerning the various circumstances which followed the theft. He was asked if he had seen any of the men after that night, and he replied that he had not seen any of

them until about seven or eight months later, when he appeared before the grand jury. Thereupon counsel for the People said, "Mr. Sheriff, will you please bring out John Domazewicz?" Dufort was then asked if he was able to identify the man who was so produced, and the witness replied, "Yes, he is the man that drove the truck the night we were robbed." Counsel for the People then said, "For the record, show that it is John Domazewicz brought into court to be identified." A picture marked People's exhibit 4 was shown the witness, and he was asked if he could recognize any of the men in the picture. He replied that he could recognize two of them, who were numbered "1" and "3," respectively. No. 3 was Domazewicz and No. 1 was Tony Vercillo. This photograph was exhibited to the jury. All of his testimony was objected to by counsel for the defense, who said he admitted the right of the People to prove that the merchandise was stolen and that Kliner received it but maintained it was prejudicial to the defendants to show the circumstances in such detail. The court overruled the objection and then denied a motion to exclude that evidence.

Later in the trial, nothwithstanding the fact that the theft had been fully proved and was not being denied by the defendants, Domazewicz was called by the People as a witness. He testified that he became acquainted with Anthony Vercillo (another one of the thieves) about five years ago and that Vercillo went under numerous aliases. He was then asked how many robberies he had participated in with Vercillo, and he replied, "Four." He testified that two of the men had guns, and that he received about $600 as his share from the sale of the butter. He told of their return to Chicago, of the unloading of the butter and of driving Dufort and his helper around Chicago and finally abandoning them and the truck in an obscure place; that he was under five different indictments, and that Vercillo and four others were jointly indicted

with him; that he hoped for immunity; that Vercillo is now in the penitentiary at Leavenworth, and told of numerous other matters in detail. Counsel for the defendants objected to these details, but their objection was overruled. Very little of this matter was competent and all of it was prejudicial. It presented a picture of crime and criminals with which the defendants had no knowledge or connection, and it was but natural that a jury would be moved and influenced against the defendants by that testimony. The rule requiring all evidence which is introduced to be relevant to the guilt or the innocence of the accused has always been applied with considerable strictness, and the wisdom of this rule is self-evident, because jurors may not be trained in logical methods of thinking about legal questions and are apt to draw incorrect inferences and conclusions without adequate foundation. Underhill on Crim. Evidence, (3d ed.) sec. 150.

Counsel for the People, in cross-examining the defendants, appeared to be reading from a written statement alleged to have been made by them. He inquired of the defendants if they had not been asked certain questions to which they had made specified answers. It was claimed by counsel that he asked those questions for the purpose of impeachment. At the conclusion of the cross-examination counsel for the defendants asked the privilege of seeing the document, in order that he might further examine the defendants and make explanation if it was so desired. The court refused to grant this request, which we think should have been allowed in this instance.

If the charge against the defendants is true, Kliner and Levin were accomplices, but it does not appear that either of them has been indicted for bribery. They were indicted in the Federal court on a charge connected with the possession of the stolen butter. Levin pleaded guilty and was released on probation. Kliner has never been tried. Their testimony was tainted, and the trial court

should have fully instructed the jury as to the way its credibility should be treated. The defendants asked for, but the court refused to give, an instruction which stated that while it is a rule of law that a person accused of crime may be convicted upon the uncorroborated testimony of an accomplice, still the testimony of an accomplice is liable to grave suspicion and should always be acted upon with great care and caution, and the jury should subject it to careful examination in the light of all the other evidence in the case; that they should consider the influence under which such testimony is given and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself or to gratify malice, and they ought not to convict upon such testimony unless they are satisfied, beyond a reasonable doubt, of its truth and that they can safely rely upon it. This instruction fully and correctly stated the law, but the court gave one much less favorable to the defendants, and although we think that under the circumstances of this case the court should have given the refused instruction instead of the other, we are inclined to the belief there was no resultant injury.

The defendants were entitled to a trial in accordance with the law of the land, which means an impartial trial, free from prejudicial and incompetent evidence, under simple and accurate instructions as to the law and with a fair opportunity to present their defense. (*People* v. *Gardiner,* 303 Ill. 204; *People* v. *Simmons,* 274 id. 528.) In order to sustain a verdict of guilty, when the proof is highly conflicting and the People's case rests largely on the testimony of those who admit their own guilty participation in the crime charged, it must appear that the record is free from prejudicial and substantial error. (*People* v. *Deal,* 357 Ill. 634.) We do not have such a record before us, and the judgment of the criminal court is therefore reversed and the cause is remanded for a new trial.

*Reversed and remanded.*