(No. 19525.— <span style="background:black">▮▮▮▮▮</span>

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DESMOND WILLIAMS, Plaintiff in Error.

*Opinion filed December 20, 1929.*

WENDELL E. GREEN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county for the murder of Rufus H. Thompson by shooting. On the trial of the cause his defense was that of self-defense. The jury found him guilty of manslaughter, and he brings the cause here for review.

The shooting occurred in a restaurant in the village of Bellwood, in Cook county. Plaintiff in error was a janitor, working for the proprietor of the restaurant. With the exception of the immediate time of the shooting there is little dispute as to what occurred. It appears from the testimony of the State's witnesses that on June 2, 1928, about noon, the deceased, with a woman named Carrie Sweeney, with whom he was boarding, came into this restaurant, conducted by Antone J. Veseley, and ordered food. Plaintiff in error was working about the premises at that time. Seated about a table were the deceased, Carrie Sweeney, Veseley and one Struckman. Shortly after deceased ordered luncheon for himself and Carrie Sweeney plaintiff in error was called into the kitchen, where the help of the res-

taurant were having food. The witness Anna Spiranek, a waitress, was waiting on the deceased and Carrie Sweeney. She testified that the deceased said to her, "Why are you eating with the dirty coon?" referring to plaintiff in error; that deceased asked the proprietor, Veseley, why he had a nigger and coon working for him, and that he continued to talk about dirty coons and niggers for some time. During most of that time plaintiff in error was working within hearing distance. He passed in and out of the dining room of the restaurant to get tools from a drawer of the buffet. On his third trip he had in his hand a pair of pliers, and as the deceased uttered another contemptuous remark about "niggers" and "coons," plaintiff in error dropped the pliers into one drawer, pulled open another drawer, took out a revolver, and, according to some of the State's witnesses, said, "Say, you!" and fired at deceased as he attempted to rise from his chair. Deceased fell on the floor with his gun in his hand. The proprietor, Veseley, testified that before the shooting deceased said to him: "You got things here I don't like; I don't like to see a coon eating with a white girl in the kitchen;" that the witness said to him, "You shouldn't say anything like 'coon;' he is a good fellow; why not call him a colored boy? He has been working for me over two years;" that the deceased said, "Well, I don't care for no niggers; I was born South, and we have no use for them out there." Others around the table suggested talking of something else, and the conversation was changed. Veseley testified that in about ten minutes plaintiff in error came in and opened a drawer in the buffet and turned and took out a revolver, saying, "I am no coon or nigger for anybody," and turning quickly shot once and Thompson fell to the floor, and that Thompson did not pull his gun before he was shot by plaintiff in error. On cross-examination Veseley testified that plaintiff in error said to the deceased, "Why do you call me a coon or nigger? I haven't mistreated anybody." He testified that Thompson told him

to get a doctor and that he was paralyzed. Carrie Sweeney corroborated the State's other witnesses. The testimony of these witnesses, with plaintiff in error, constitute the entire evidence as to the occurrence. Thompson died on July 27, 1928.

Plaintiff in error's testimony varies from that of the other witnesses as to the statements and actions of deceased. He testified that he went into the restaurant three times. The first time he went in deceased said, "I hate a —— —— nigger," to which plaintiff in error made no reply; that when he went back to the dining room for pliers the third time, deceased said, "I don't like to see a —— —— nigger around; when I see a nigger around my heart aches; it burns me up." Plaintiff in error testified that he then said to deceased, "Please, mister, why do you talk about me like that and call me a nigger and coon? Did you see me do anything or did I give you cause to call me a nigger or coon?" that deceased then said, "Don't talk to me, you black —— —— —— ——; I will blow your head off," and that deceased then stood up, holding his gun, and that he was standing up with a revolver in his hand before plaintiff in error opened the drawer to take out the gun. In this his testimony is directly contradicted by all the other witnesses in the case. Witnesses testified that plaintiff in error previous to the shooting bore a good reputation as a peaceable and law-abiding citizen. He testified that he had never previously been arrested.

As to the cause of death Dr. William A. Lynott, coroner's physician for Cook county, testified that he made an examination of the body at the hospital after the death of Thompson. He testified that an X-ray picture revealed that the bullet wound shattered the ninth rib and the spinal cord, passing from the left to the right side of the body. He testified that he did not make an autopsy; that other doctors had removed the bullet; that he just took the records from the hospital and viewed the remains. He was asked

by the State's attorney if there was any doubt about the cause of death, and he answered, "Yes." He stated, however, that in his opinion death was due to heart disease, superinduced by nephritis, an infection of kidneys and an inflammation of the bladder, due primarily to cutting of the spinal cord by a gunshot wound. No objection was made to this testimony when offered, but on cross-examination he was asked whether he made a port-mortem examination of the body himself, and he answered that he did not. He was then asked where he got his information as to cause of the death, and replied, "From the records of the hospital." Counsel for plaintiff in error then moved to strike the testimony of the doctor with reference to cause of death. The court did not directly rule upon the motion but stated: "He may state about the X-ray. That is simply a physical thing—what he saw and which you remember. His testimony showed an X-ray of this particular body." The witness then stated that the X-ray had revealed what he said and purported to show the course of the bullet. The X-ray photograph was not introduced in evidence or in any way identified, nor was the witness qualified by testimony as an expert concerning the reading of X-ray photographs or skiagraphs.

The principal assignments of error are: (1) That the trial court erred in permitting the testimony of the coroner's physician to remain in the record when it was shown that he was testifying from records of a hospital or an X-ray photograph and without having made a post-mortem examination; and (2) errors on the part of the trial court in instructing the jury.

The testimony of the coroner's physician, when given from records of the hospital, without proof of their authenticity, was clearly inadmissible as hearsay and should have been stricken. His testimony concerning matters disclosed by the X-ray was likewise inadmissible because no ground for such testimony had been laid. The rule in re-

gard to the use of X-ray pictures or skiagraphs when sought to be put in evidence requires that the witness testify either that the X-ray picture shows accurately what the witness saw by examining the body with a fluoroscope, or that the witness is skilled in the use of the X-ray machine and that he took the picture concerning which he testifies and is able to say that the picture is accurate. (*Stevens* v. *Illinois Central Railroad Co.* 306 Ill. 370; *Wright* v. *Upson,* 303 id. 120; *Chicago Union Traction Co.* v. *Giese,* 229 id. 260; *Chicago City Railway Co.* v. *Smith,* 226 id. 178; *Chicago and Joliet Electric Railway Co.* v. *Spence,* 213 id. 220.) It was clearly error to permit the witness to testify to his conclusions as to what the skiagraph showed, without proof of his qualifications as to that matter or as to the accuracy of the skiagraph and accounting for failure to produce it. There was no other proof of cause of death in this case. The deceased lived for fifty-three days after the shooting. In view of the condition of the record as to cause of death in this case, and the fact that the proof of cause of death rests upon this incompetent testimony, its admission was an error requiring the reversal of this judgment.

It is said on behalf of the People that no objection was made to this testimony. There was a motion to strike the testimony of this witness, and, while not directly overruled, a fair construction of the court's ruling was that the motion to strike had been denied as to the improper testimony with reference to what the skiagraph showed.

As this cause must be tried again it is necessary to consider objections as to instructions. Objections are urged to every instruction given on behalf of the People, and many of these objections are well founded. The first instruction advised the jury that they might find plaintiff in error guilty of manslaughter. This instruction was proper. The evidence was such that the jury could reasonably have concluded that the homicide was in sudden heat of passion, caused by provocation apparently sufficient to make the pas-

sion irresistible. (*People* v. *Beil,* 322 Ill. 434; *People* v. *White,* 311 id. 356.) The second instruction told the jury that circumstances which would justify a killing in self-defense must be "such as a reasonable mind would have so considered." The jury are not to determine what a reasonable man would have been induced to believe, but what the defendant at the time and under the circumstances, acting as a reasonable man, did believe. (*People* v. *Duncan,* 315 Ill. 106.) The fourth instruction informed the jury that when one deems himself called upon to act in necessary or apparently necessary self-defense of his person, then his actions should be reasonable. This instruction is open to the objection urged against the second instruction, and is likely to mislead the jurors to believe that they should decide whether in their judgment the act of the defendant was apparently necessary in self-defense. (*People* v. *Dugas,* 310 Ill. 291.) The sixth instruction is open to the same objection as the second and fourth. The ninth instruction told the jury "that before the defendant can avail himself of the right of self-defense it must appear that at the time of the killing the danger was apparently so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the killing was absolutely necessary or apparently necessary." This portion of the instruction is erroneous, in that it is not limited to the necessity apparent to the defendant, acting as a reasonable man. (*People* v. *Dugas, supra.*) This instruction also instructs the jury as to the rule that either the person killed must be shown to be the first assailant, or that the defendant really and in good faith endeavored to decline further combat before the mortal wound was inflicted. Such rule has no application to the facts of this case and so applied is erroneous. The rule in a case such as this is, that if one who is not the first assailant be put in apparent danger of his life or great bodily harm he need not attempt to escape but may lawfully stand his ground and meet force with force,

even to the taking of his assailant's life, if necessary or apparently necessary to save his own life or to prevent great bodily harm. (*People* v. *Durand,* 307 Ill. 611.) There is no evidence of a struggle between deceased and plaintiff in error, and that portion ·of the instruction is misleading. This record also contains three involved instructions on reasonable doubt, which have been repeatedly condemned by this court. Numerous other instructions ignore the law of self-defense and should not have been given in this case. (*People* v. *Spranger,* 314 Ill. 602; *People* v. *Kowalski,* 332 id. 167; *People* v. *Duncan, supra; People* v. *Durand, supra; People* v. *Penman,* 271 Ill. 82; *People* v. *Bissett,* 246 id. 516; *Hammond* v. *People,* 199 id. 173.) As they are such as will probably be avoided at re-trial, it is not necessary to set them out here.

For the errors herein considered the judgment is reversed and the cause is remanded.

*Reversed and remanded.*