(No. 20591.—

The People of the State of Illinois, Defendant in Error, *vs.* Walter Novak, Plaintiff in Error.

*Opinion filed February 18, 1931—Rehearing denied April 14, 1931.*

Joseph B. Lofton, and George O. Tiffany, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and J. J. Neiger, (Henry T. Chace, Jr., and Edward E. Wilson, of counsel,) for the People.

Mr. Chief Justice Dunn delivered the opinion of the court:

The grand jury at the January term, 1929, of the criminal court of Cook county indicted Walter Novak for robbery while armed with a pistol, having been previously convicted of grand larceny upon an indictment returned at the March term, 1925, of the same criminal court for robbery and the forcible taking of the property of Melville L. Brock of the value of $17. He was tried at the March term, 1929,

of the criminal court, was found guilty and sentenced to imprisonment in the penitentiary at Joliet for his natural life, and has sued out a writ of error.

The only evidence of the actual commission of the crime was the testimony of Joseph E. Kelleher and Henry Taylor, who were both victims of the crime. Kelleher was Taylor's employer, and on the evening of November 24, 1928, they were coming home together in Kelleher's car from an entertainment about ten o'clock and when they arrived at Kelleher's garage back of his house he backed his car into the garage. It was a two-car garage and was already occupied by another car. The garage was lighted by a sixty-watt light. When they backed into the garage and got out of the car they were held up by two men who were armed and ordered them to put up their hands and go to the back part of the garage, sticking their pistols in the backs of the victims and searching them while they stood behind, taking two dollars from Kelleher and twenty-two from Taylor. They were then ordered to walk ahead, and they did so between the two cars toward the front of the garage. Then the robbers ran, got into a car and drove away. Kelleher and Taylor then called up the Grand Crossing police station and told what had happened. This was Saturday night, and on the evening of the next day, Sunday, November 25 Novak was seen by a police officer coming out of the Jackson Park theater with his wife. A message had been sent out that Novak was wanted for robbery and to pick him up. He was taken to the Woodlawn police station and transferred to the Grand Crossing station, where he was seen the next day by Kelleher and Taylor, each out of the presence of the other, at separate times, together with four or five others, and was identified by both as one of the robbers.

The defense was an alibi testified to by the defendant and the three sons of his wife, of the respective ages of sixteen, fifteen and eleven years. The defendant, his wife and her three sons were living together, and he testified that all the

evening and night of November 24, 1928, he was at home. At ten o'clock he was playing checkers and dominoes with the boys and was playing with them all evening. The two older boys were employees of the Postal Telegraph Company at a branch office of which their mother was the manager. They both testified that the defendant was at home all evening on November 24 and was playing checkers and dominoes with them from 7:00 o'clock to about 11:30, when they went to bed. The defendant did not leave the house during that time and they were there all the time. They sat up, playing, that night because it was Saturday night and they were going to celebrate Thanksgiving the next day because the boys had to work on Thursday, Thanksgiving day. Their mother did the marketing in the afternoon. The younger boy testified that in the evening the other boys did the dishes and afterward their mother cleaned the turkey and then they played games, dominoes and checkers. He did not play but watched them and went to bed at 10:30. He knew the time because his mother said, "It is 10:30 now; you have to go to bed." The defendant did not go out at all but was there all evening.

The prosecution's evidence, if believed by the jury, justified the verdict of guilty of robbery, being armed at the time with a dangerous weapon. The evidence for the defendant, if believed, required an acquittal. On paper no reason appears discrediting the testimony of any of the witnesses except the defendant, who is discredited if his former conviction is legally shown. The circumstances of the robbery in the lighted garage afforded a good opportunity, even though brief, for the victims to observe the robbers, and their identification of the defendant is positive. Identification, however, may easily be mistaken. The alibi also is well supported, but it is sometimes easy to frame an alibi. The case is therefore one for the decision of the jury, whose special province it is to determine the credibility of the witnesses and the weight of the evidence.

The judgment must, however, be reversed for an error of the court in the admission of evidence. The prosecution produced the record of the criminal court to sustain the allegation of the previous indictment of the defendant for robbery and his conviction of grand larceny. Section 6 of division 13 of the Criminal Code provides that no person shall be disqualified as a witness in a criminal case by reason of his having been convicted of any crime, but such interest or conviction may be shown for the purpose of affecting his credibility. This conviction can be proved only by the record or an authenticated copy, and it must appear that the conviction was before a competent tribunal having jurisdiction to act and decide. At least the caption, the return of the indictment into open court by the grand jury, the indictment and arraignment of the defendant are parts of the record indispensable to the judgment of conviction and are necessary to its admissibility in evidence to affect the credibility of the party as a witness. (*Bartholomew* v. *People,* 104 Ill. 601.) That case was cited in a later case where the same question was presented, and the court, after quoting the language of the former opinion in regard to the essential parts of the record, said, "and we now add, the record of the impaneling and verdict of the jury, or the waiver of the jury." (*Kirby* v. *People,* 123 Ill. 436.) These cases were approved and followed in *Clifford* v. *Pioneer Fire-Proofing Co.* 232 Ill. 150; *People* v. *Andrae,* 295 id. 445; *People* v. *Jabine,* 324 id. 55.) The record introduced failed to show the return of the indictment into open court or the arraignment of the defendant. There was therefore no basis for the verdict finding that the defendant had been previously convicted of grand larceny.

In the argument of the Attorney General it is contended in regard to the record of the defendant's conviction of grand larceny that counsel for the defendant said he would admit the record, and a stipulation was entered into; that after some dispute the State decided to prove the record in

its entirety rather than rely upon a stipulation, but the stipulation was never withdrawn. This is not a correct statement of what occurred. When the clerk was called to produce the record the defendant's counsel said he admitted that; "we admit the record—we admit whatever is charged in the indictment about the former convictions and all that," but no stipulation was entered into. When the assistant State's attorney undertook to state the stipulation the defendant's counsel objected to a part of the statement because it was not in the record, and the judge put an end to the effort to stipulate by the remark: "Oh, well, let's put on the record here if we can't get a stipulation; we won't fool around; let the record go in and make formal proof; prove the record." Lavin, for the State, said, "It will be all right, but do you object?" and Lynch, for the defendant, said, "Well, I will withdraw my objection then;" but the court said: "No; object to the fact that the indictment does not show that Judge Lindsay was judge of the superior court? If there is going to be those foolish objections we will go ahead here. Go ahead and put your formal proof in." It is not true that the State decided to prove the record in its entirety rather than rely upon the stipulation. The court decided that he would not fool around but if those foolish objections were to be made would go ahead, and he directed the State's attorney to go ahead and put his formal proof in. The State's attorney merely followed the direction of the court. A stipulation means an agreement, and if one party's statement of it is objected to by the other, there is, of course, no agreement. The defendant's offer to stipulate was rejected by the court and never became effective, and the record, when proved, lacked several of the parts which have been held indispensable to the judgment of conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*