**People of the State of Illinois, Plaintiff-Appellee, v. Cleon Robbins, (Impleaded), Defendant-Appellant.**

**Gen. No. 51,115.**

First District, Third Division.

November 2, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction of robbery for which defendant was sentenced to the penitentiary for fifteen to forty-five years.

Defendant contends on appeal that the identification of him was insufficient to sustain a conviction beyond a reasonable doubt; that defendant was denied effective assistance of counsel; that evidence of his prior conviction should not have been allowed; that the jury was improperly instructed as to that evidence; that the manner in which that evidence was introduced was prejudicial to defendant, and that evidence obtained in violation of defendant's constitutional rights was improperly admitted.

The evidence showed that on December 12, 1964, defendant entered the Chateau DuRoi Hotel in Chicago and

asked the hotel guard, Mr. King, if he could purchase a soft drink. He then asked the cashier for change, purchased the soft drink and left the hotel. Seconds thereafter another man, Bass, entered the hotel and disarmed the guard. The cashier ducked down on the floor in the cashier's cage and telephoned the police. King testified that at that time defendant Robbins reentered the hotel and said, "Come on, man. She's calling the police." According to King, defendant was twelve to fourteen feet from him when he reentered the hotel. Bass took King's gun belt and fled the premises. The cashier said she did not see defendant enter the hotel a second time because she was down on the floor calling the police. Both witnesses testified that when they saw defendant he was wearing a short brown overcoat.

Police officers Wilkins and Lundin testified that they received a radio call concerning an armed robbery in progress. As they drove southbound in an alley about one and a half blocks from the scene of the crime they observed two men cross in front of the car. The men were walking eastbound "shoulder to shoulder" at a rapid pace and looking back over their shoulders. The officers, in a marked squad car, pulled alongside the men and told them to stop. Defendant stopped and the other man (Bass) ran away, but was later captured. Defendant was arrested and searched since the police radio message had indicated that it had been an armed robbery. They removed a loaded .38 caliber revolver with the hammer cocked from defendant's pocket. One officer testified that Robbins had on a short coat.

The defendant and Bass (after his capture) were taken to a police station where they were identified by the hotel guard and cashier.

The defendant testified that he went to the hotel, after having visited a friend nearby, to buy a soft drink but saw no one on his way out. He said that, as he was walking toward the place of his arrest, he was alone, but

450

he noticed two men behind him walking very fast. One of them walked across the street and defendant was nervous because he had on a new full length black leather coat and a new hat and he did not know what "they had on their mind." He claimed that he had no gun and that the gun the police recovered was lying on the ground near him.

Codefendant Bass testified that he met a friend named Eddie a few minutes after 6:00 p. m. on the evening in question. He, armed with a .38 caliber revolver, told Eddie that he had to go to the hotel for something. He proceeded into the hotel, disarmed the guard and told the cashier not to move, but she ducked down behind the counter. Eddie then appeared and said, "Come on, Jack, she is calling the police." The two, Bass and Eddie, left together. Just before the police officers told Bass to stop, Eddie crossed the street and disappeared. Bass did not know Eddie's last name nor how to reach him although they had grown up together. Bass said Robbins was not involved in the robbery nor was he walking with Bass when the police stopped them.

Defendant and Bass, according to their testimony, had known each other for about fifteen years but neither recognized the other as they walked down the street.

The State produced certified copies of prior convictions of defendants. Both defendants were convicted and Robbins appealed.

██ ██ Defendant first contends that the identification of him was insufficient to sustain a conviction beyond a reasonable doubt. We do not agree. Mr. King talked with Robbins at close range about the purchase of a soft drink. It was only a matter of minutes later that he again saw defendant in the hotel, when he called to Bass. The witness was unshaken in his certainty of identification and it is well settled that the "testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the

testimony is contradicted by the accused." People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599. Furthermore, the sufficiency of the identification was a question of fact for the jury and this court will not reverse unless the testimony is so unsatisfactory as to leave a reasonable doubt of the guilt of the accused. People v. Brengettsy, 25 Ill2d 228, 184 NE2d 849. There is no such doubt here. The face-to-face encounters afforded King ample opportunity for a positive identification of defendant.

■ Defendant also claims that, because there was no lineup, the identification was inherently unreliable. People v. Gardner, 35 Ill2d 564, 221 NE2d 232, holds that such could affect the weight to be given the testimony but does not make the identification useless. The United States Supreme Court decisions, upon which defendant relies are United States v. Wade, 35 Law Week 4597; Gilbert v. California, 35 Law Week 4614; and Stovall v. Denno, 35 Law Week 4610. These cases say that, with prospective application only, during a lineup or other identification procedure, defendant is entitled to be represented by counsel. These cases are inapplicable to the case at bar.

Defendant next contends that he was denied effective assistance of counsel in that his trial counsel refused to make a motion to suppress evidence, failed to object to the prejudicial presentation of evidence of defendant's prior conviction, failed to object to the sending of the court record of that conviction to the jury room, and initiated testimony by the defendant in a manner indicating he thought it was unwise for defendant to testify.

The criteria to be used in evaluating counsel's competency were set forth in United States ex rel. Weber v. Ragen, 176 F2d 579, at page 586:

"As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of

452

his ability, and his service is of such a character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls of our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one."

In People v. Ashley, 34 Ill2d 402, 411, 216 NE2d 126, the court said:

". . . it is well settled that in order to establish incompetency of counsel, actual incompetent representation and substantial prejudice to the defendant as a result thereof must be established. (Citing cases.) Nor can charges of incompetency be based solely upon assertions."

■■ It is with the above principles in mind that we examine the specific instances decried by defendant. He claims that counsel should have made a motion to suppress evidence obtained from defendant at the time of his arrest. The record shows that counsel had considered making the motion and determined that "no legal benefit would accrue to the defendant" in presenting the motion. Counsel acted in a rational manner and had defendant's best interest in mind when he decided not to make the motion. We shall discuss this point later, but, here, it will suffice to say that it was not proof of incompetency of counsel.

■■ Defendant further alleges that his counsel failed to object to the presentation of evidence of defendant's prior conviction and the taking of the court record thereof into the jury room. It is the law in Illinois that evidence of prior convictions may be introduced by presenting certified copies of the clerk of the court of the prior convictions. People v. Novak, 343 Ill 355, 175 NE 551; People v. Crump, 12 Ill2d 402, 147 NE2d 76. De-

fendant asserts that it was highly prejudicial to allow the part of the record of conviction which stated that defendant had first pleaded not guilty and then later changed his plea to guilty and the statement that he was convicted of armed robbery involving a lead pipe. However, the Novak case, supra, held that the indictment and arraignment are parts of the record indispensible to the judgment of conviction. See also People v. Smith, 63 Ill App2d 369, 211 NE2d 456. The showing in the record that defendant first pleaded not guilty and then changed his plea to guilty and that he was convicted of armed robbery involving a lead pipe did not, in our opinion, affect the admissibility of the evidence. As to the taking of the document to the jury room, defendant's reliance on People v. Spranger, 314 Ill 602, 145 NE 706, is misplaced. That case said that instruments of evidence depending for their value on the credibility of the maker may not be taken to the jury room. This rule is inapplicable to the evidence here involved, as the document was a court record. Certainly counsel is not to be deemed incompetent for failing to make objections which had no legal basis and which could only be overruled.

The other alleged error of counsel is his initial questioning of defendant. The relevant testimony follows:

"Q. . . . you are testifying of your own accord here, is that correct?

"A. That is correct.

"Q. And you have instructed your defense counsel, namely, myself and Mr. ——— that you do wish to testify and present your case to the Court and to this jury, is that correct, sir?

"A. Yes, that is correct.

"Q. And you are testifying, although you have been informed by your defense counsel, and you also know that you don't have any obligation to testify, is that correct, sir?

"A. Yes, I know this.

454

"Q. Knowing that, you still persist in testifying?
"A. I will."

The reasoning behind such questioning cannot be here determined with certainty but defendant's assertion that counsel was seeking to indicate that he felt defendant should not testify and that he felt defendant was lying is mere conjecture. It could just as readily be said that counsel was stressing the fact that defendant did not have to testify and was doing so because he had no fear of truth. This was a matter of trial tactics and does not render counsel incompetent.

The remaining contentions of defendant were not properly preserved for review in that they were not objected to during trial. People v. Clements, 28 Ill2d 534, 192 NE2d 923; People v. Dauphin, 53 Ill App2d 433, 203 NE2d 166; People v. Pecho, 362 Ill 568, 200 NE 860; People v. Brancztet, 59 Ill App2d 381, 208 NE2d 416. However, we have reviewed the record and have determined that none of the alleged errors constituted reversible error. We set forth below our reasons for deciding that the result would have been the same even if all points hereafter discussed had been properly preserved for review.

Defendant contends that the rule allowing the introduction of evidence of defendant's prior conviction is unconstitutional, that the instruction governing the use of such evidence was improper and prejudicial, especially in light of the court's comments at the time of introduction, and that the manner of introduction resulted in substantial prejudice to defendant.

██ The United States Supreme Court recently considered the admission of evidence of prior convictions in the case of Spencer v. Texas, 35 Law Week 4164. The majority opinion said in part:

"Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded

455

except when it is particularly probative in showing such things as . . . when the defendant has testified and the State seeks to impeach his credibility. . . .

". . . To say that the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. . . . This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function. . . ."

█ The instruction given here was in the language of the statute and read as follows:

"The Court instructs the jury, in the language of the statute, that no person shall be disqualified as a witness in any criminal case by the reason of his having been convicted of any crime; but such conviction may be shown for the purpose of affecting his credibility."

Defendant argues that the above did not properly limit the use of the evidence of prior convictions. We do not agree. Were it not introduced for a limited purpose no specific instruction would have been necessary. This instruction pointed out that limited use, thereby precluding any other use. The identical instruction was used and approved by us in People v. Wright, 80 Ill App2d 300, 225 NE2d 460. In that case the instruction was not attacked directly but we commented that the court had correctly instructed the jury on the matter of the use of prior convictions. We feel that the instruction here given informed the jury of the limited use of the evidence of

prior convictions and to say that having been so instructed the jury might consider them as evidence of guilt in the instant case is, in our opinion, an implication that the present day jury has little intelligence. With this implication we do not agree.

Defendant also argues that the remarks of the court regarding the certified copy of defendant's prior conviction at the time it was introduced constitute reversible error. During a discussion before the bench the court said to the assistant state's attorney, "you may read them to the jury as evidence." Defendant argues that this statement did not limit the use of the prior record. Of course, the record was in evidence and constituted evidence. The court instructed the jury in writing of the purpose for which that evidence might be used. We do not feel the remarks of the court were prejudicial particularly in view of the subsequent instruction to the jury. Although defendant refers us to the Wright case, supra, that case is distinguishable in that the objectionable remarks therein were by the state's attorney, who, in effect, attempted to instruct the jury as to their consideration of the documents, and thereby usurp the function of the court.

Further, we believe that the State chose the only correct method of presentation of prior evidence of this sort in providing certified copies of the court clerk of the prior conviction. People v. Novak, supra; People v. Crump, supra.

 Defendant next contends that evidence obtained in violation of his constitutional rights was improperly admitted. Probable cause for arrest exists when an offense has been committed and the officer has reasonable grounds for believing that the person to be arrested has committed it. (Ill Rev Stats 1965, c 38, par 107–2; People v. Peak, 29 Ill2d 343, 194 NE2d 322.) In this case the officers had information that an offense had been committed and defendant and Bass were sighted, just a block and a half from the scene of the crime, acting suspiciously

in walking at a rapid pace and looking back over their shoulders as if they were running from someone. Here the suspicious actions of defendant and Bass and their physical proximity to the scene of the crime provided a sufficient factual basis for the officers to have probable cause to believe the men had committed the crime. The search was an incident to that lawful arrest and was within the officers' rights to search for evidence of the armed robbery and insure their own safety.

For the above reasons the judgment is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.