The People of the State of Illinois, Plaintiff-Appellee, *v.* James T. Higgs, Defendant-Appellant.

(No. 55130;

First District (2nd Division)—May 15, 1973.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, James Higgs, was tried before a jury for the offense of murder. He was found guilty and sentenced to 15 to 30 years in the penitentiary. He appeals and contends:

1. That the prosecution knowingly used false evidence to obtain his conviction; and
2. That defendant was denied a fair trial in that:
   a. The cross-examination of defendant was improper and prejudicial;
   b. Prejudicial hearsay evidence was improperly admitted into evidence;
   c. The trial court intimated to the jury that defendant was present when the shooting occurred; and

d. The prosecutor's closing argument was prejudicial.

The deceased, Joseph King, was shot shortly after midnight on August 16, 1969. His body was found lying on the sidewalk on the west side of Carpenter Street just south of 63rd Street. King was a junior member of the Six-Tray Disciple Gang; defendant was its vice-president and a senior member. Three key prosecution witnesses were also members of the gang.

Roscoe Roberts testified that he and Joe King were walking down Carpenter Street at approximately midnight. They were going to find the person or persons who had "knocked out" their friend "T.T." When they reached 63rd and Carpenter, they encountered defendant who was drinking wine under elevated train tracks in an alley behind a liquor store. Roberts asked defendant if he knew who had knocked out "T.T.," and defendant responded "No, forget it." Roberts and King then proceeded to walk across to the east side of Carpenter Street. Defendant shouted at them to come back, and, when they said no, defendant exclaimed "You ain't coming back, huh, punks?" Roberts testified that he then heard shots fired, turned and saw defendant, with a gun in his hand, standing near the alley on the west side of the street. King staggered and commenced running. Roberts then ran up to defendant and swung at him, but was thrown to the ground by police officers who had immediately arrived on the scene. Roberts got up and ran around the block in an effort to find King.

On cross-examination, defense counsel asked Roberts at what time he met King on August 15 prior to the shooting. The prosecutor objected and requested a conference outside the presence of the jury. He argued that defense counsel was endeavoring to bring forth evidence that King had a gun in his possession at 3 P.M. on the afternoon of August 15. The prosecutor informed the court that he, defense counsel and a public defender investigator were present the day before trial when Roberts was being interviewed, and that Roberts told defense counsel that King had a gun. The prosecutor argued that this testimony would be irrelevant to the issues. The court, however, ruled that the jury should hear all the testimony. In the presence of the jury, Roberts answered that King did not have a gun, and denied making the statement in the presence of the prosecutor and investigator. Defense counsel subsequently called the investigator, who testified that, at the meeting with the prosecutor and defense attorney, Roberts had stated that King had a .22 caliber gun on August 15.

James Walsh, another Six-Tray Disciple member, testified that he was standing alone in front of the liquor store when he heard the shots. He ran around the corner and saw friends on the street who were shouting

that defendant had shot King. He also saw defendant with a gun in his hand. On cross-examination Walsh stated that there were approximately 10 policemen on the scene when he saw defendant with the gun. He also stated that he neither saw Roberts swing at defendant, nor saw the police throw Roberts to the ground.

Larry McCaskill, also a member of the gang, testified that he heard shots, ran around the corner from the liquor store and saw defendant pointing a gun at Roberts and King. On cross-examination this witness testified that King had a gun in the evening prior to the shooting, but that it was only a cap gun which they had unsuccessfully tried to convert into a zip gun.

Chicago police officers testified that no weapons were found on King's body. One officer testified that, when he arrived at the alley on the west side of the street, 20 to 30 persons were standing around. As he got out of his squad car, someone in the crowd shouted, "He is the one that did the shooting," indicating a group of four men standing near the squad car. These four men, one of whom was defendant, were searched, but no gun was found on defendant. Four persons from the crowd then attacked defendant, shouting that he had shot King. The court sustained an objection to the testimony as to the oral accusations of the attackers, but allowed the officer to testify to the attack on defendant.

Stephen Hart, the acting president of the gang, testified for defendant that he was with defendant in front of the liquor store at the time of the shooting. He had gone inside while defendant had remained outside. As he was walking from the store, he heard the shots. Defendant was still standing outside the store and had no gun in his hand. He and defendant ignored the shots, walked around the corner and the police arrived.

Defendant testified that he was standing in front of the liquor store when he heard the shots. He stated that Roberts, as leader of the junior members of the gang, wanted to take control of the whole gang. On cross-examination, the prosecutor asked defendant what his duties as acting vice-president were, and inquired into the structure and hierarchy of the gang. Defendant testified that he would protect members of his gang by using pistols if necessary, and would allow members to protect themselves with pistols.

Initially, defendant contends that the State knowingly used false evidence to obtain his conviction. Defendant maintains that the prosecution's chief witness, Roscoe Roberts, lied before the jury. The prosecutor knew that Roberts had previously stated that King was armed on the afternoon prior to the shooting. The prosecutor informed the judge that he was present when Roberts made that statement. However, he did nothing to correct Roberts' testimony. The State maintains that there

was no false testimony, that the testimony of the public defender investigator contradicted Roberts' testimony, and that the only issue is one of credibility of the witnesses.

■■■ A defendant is denied a fair trial when a conviction is obtained through the use of false evidence. This is also true when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. (*Napue v. Illinois*, 360 U.S. 264.) Fundamental fairness proscribes the knowing use of false evidence, even though the falsehood bears upon a witness's credibility rather than directly upon defendant's guilt. The Supreme Court in *Napue v. Illinois, supra,* stated:

> "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors * * * that a defendant's life or liberty may depend." 360 U.S. 264, 269.

■■ The duty of a prosecutor is not only to represent the State, but also to represent the people by seeing that defendants receive fair trials. When a prosecutor learns that his witness has made an untrue statement it is his obligation to inform the jury of that fact. (*People v. McKinney*, 31 Ill.2d 246, 201 N.E.2d 431.) In the instant case, the prosecutor knew that Roberts was lying in his testimony before the jury. At that time, it became incumbent upon him to disclose to the jury that he was present at the prior meeting with Roberts and defense counsel. The false testimony was not cured by the subsequent testimony of the public defender investigator, because the jury was left to weigh the credibility of both witnesses. If the prosecutor had informed the jury of the prior statement, the jury would not have been in the position of believing either Roberts or the investigator.

In addition, we believe that the prosecutor compounded his error by stating in his closing argument that the investigator's testimony was "worthless." He told the jury that he was at the meeting with Roberts and defense counsel, and that Roberts had stated that King had a gun, but that it was a toy gun. This did not merely help to impeach Robert's testimony, as the State contends, but was an attempt to mislead the jury by interposing a barrier to the full disclosure of the facts. In the conference with the trial judge, the prosecutor stated only that Roberts had said that King had a gun, not that it was a toy gun. But even if that were true, the prosecutor should have clarified this point when he heard Roberts deny making his prior statement.

■■ We cannot speculate as to whether the jury would have accepted Roberts' full testimony if his credibility had been impaired by proper revelation of his false testimony. See *People v. Faulkner*, 7 Ill.App.3d

221, 287 N.E.2d 243. This witness was the key prosecution witness, and the jury's determination of guilt may well have been based on his testimony alone. Two other witnesses testified to seeing defendant with a gun after the shooting and after the police arrived. However, no gun was found on defendant, and the police on the scene immediately after the shooting testified that they did not see defendant with a gun. In view of this close and conflicting evidence, the jury should have been informed as to all matters within the knowledge of the prosecution bearing upon the credibility of this witness, and failure to do so requires reversal of defendant's conviction and remandment of this cause for a new trial.

While ordinarily we might see no need to consider defendant's other contentions relating to the conduct of the trial, we do so here in order to insure that what we regard as error is not repeated in the new trial.

■■■ Defendant was cross-examined as to the structure, hierarchy and membership requirements of his gang. The scope of cross-examination is within the discretion of the trial judge. (*People v. Winstead*, 90 Ill.App.2d 167, 234 N.E.2d 175.) The matter of the gang structure was initially put in evidence by defendant on direct examination. He stated that the prosecution's witness Roberts was testifying against him because Roberts wanted to take control of the gang. Therefore, cross-examination as to the operation of the gang was proper, and there was no abuse of discretion. (*People v. Hairston*, 10 Ill.App.3d 678, 294 N.E.2d 748.)

■■ As to the matter of prejudicial hearsay, a police officer testified without objection that when he arrived on the scene, a person in the crowd of 20 to 30 people shouted that King's killer was one of 4 men standing on the scene. The officer also stated that, after defendant was searched, 4 persons attacked defendant shouting that he had shot deceased. Objection to the introduction of the statements by the attackers was sustained, but the officer was allowed to testify to the attack. We believe that this testimony was inadmissible hearsay.

■■ Courts in Illinois have recognized that assertive conduct, as well as verbal statements, may be inadmissible hearsay. (*People v. Reeves*, 360 Ill. 55, 195 N.E. 443; *People v. Hazen*, 104 Ill.App.2d 398, 244 N.E.2d 424.) In the instant case, the testimony that defendant was attacked only could have been relevant to prove that defendant had killed deceased. (See *People v. Willy*, 301 Ill. 307, 133 N.E. 859.) Therefore, this testimony was prejudicial hearsay which should have been excluded. We note that no objection was made to this testimony at trial. However, in view of the remandment of this case for a new trial, we believe that mention of this error is necessary.

Finally, after redirect examination of Roscoe Roberts, the trial judge

extensively questioned this witness. This questioning, which covers approximately 6 pages of the abstract of record, precisely clarified every detail of Roberts' testimony.

The extent to which a judge may examine witnesses is largely in his discretion and depends on the circumstances of each case. (*People v. Giacomino,* 347 Ill. 523, 180 N.E. 437.) A judge has a right to question witnesses, but he must do so in a fair and impartial manner without showing prejudice or bias against either party. (*People v. Gilbert,* 12 Ill.2d 410, 147 N.E.2d 44.) In the instant case, the trial judge presumably felt that further clarification of Roberts' testimony was necessary. During cross-examination, a juror had shouted that Roberts had not said that the man he saw at the scene had a gun. At that time the judge told the jurors that they were restricted to the questions and answers from the witness stand. In addition, the prosecutor and the defense counsel failed on direct examination and cross-examination to present the facts on Roberts' testimony to the jury in a comprehensible manner. In light of the confusion surrounding this testimony, the trial judge admirably performed his duty to enlighten the jury as to the relevant facts.

For the above reasons, the judgment of the circuit court is reversed. The cause is remanded for a new trial.

Reversed and remanded for a new trial.

LEIGHTON and HAYES, JJ., concur.