The People of the State of Illinois, Plaintiff-Appellee, *v.* Ward Jones, a/k/a Charlie Brown, Defendant-Appellant.

(No. 72-336;

Fifth District—May 23, 1975.

Robert E. Farrell and Michael J. Rosborough, both of the State Appellate Defender's Office, of Mount Vernon, and Ted Mannen, Research Assistant, for the appellant.

Ralph J. Mendelsohn, of Model State's Attorneys Support Unit, of Cairo, for the People.

Mr. JUSTICE GEORGE MORAN delivered the opinion of the court:

Defendant Ward Jones appeals from a judgment of the circuit court of Jackson County entered after a jury found him guilty of the crime of rape.

The prosecutrix testified that she was a student at Southern Illinois University in Carbondale and resided in Murphysboro. She stated she had gone to church on the evening in question and was walking home at about 7 or 7:30 P.M., when a man in a car stopped and asked her if she wanted a ride. The prosecutrix refused, but he insisted and she eventually relented. She later positively identified the defendant as the man who was in the car. She described him as being in his thirties. The defendant was 54 at the time. When they reached the trailer court where she lived, he drove past and would not stop. He then held a small pocket knife to her throat, made her kiss him. The prosecutrix testified that she attempted to make conversation with her assailant to relax him. He said his name was John and that he was a student at Southern Illinois Uni-

versity, taking courses in history and mathematics. On cross-examination, she admitted that after they drove past the trailer court, she invited him to her trailer. Her explanation was that she thought she might be able to get away or calm him down and would be safer in the presence of her roommate.

After driving a considerable distance, he stopped the car in a field. She said that the knife was no longer in sight. He made sexual advances toward her and she protested. She said he began getting mad. He continued his advances; once again she protested. He became more angry. She said that she was frightened. He told her to lie down but before she did, the following exchange took place:

> "The Witness: A. So I said, 'let's get on with it,' and he sort of jumped back or moved back and looked at me and he said, 'What do you mean?' And I said, 'Well, take off your pants,' and he said, 'No, you take off yours first.' And I said, 'No * * *'."

The prosecutrix explained her actions by saying that "I got really scared and I thought maybe if I frightened him he would change his mind. * * * I was really afraid and I was at the point where I would try anything." She said she placed a "sanitary napkin of some sort under the car seat." A paper table napkin was found under the seat of defendant's car. The napkin was stained with Type A blood, the same type as that of the prosecutrix.

She asked to be taken to her home in Murphysboro, but her assailant insisted on taking her to Carbondale. While stopped at a stop sign in Murphysboro, the prosecutrix grabbed a license plate registration slip bearing the defendant's name from the car windshield, jumped out of the car and ran toward a house, which happened to be her boyfriend's house. She then went to the police, arriving at the station at approximately 8:30 P.M.

Two deputy sheriffs testified that the prosecutrix reported the crime to the sheriff's office at approximately 8:30. She gave them the license plate registration slip and she was taken to the local hospital. Afterwards the prosecutrix retraced the route to the scene of the alleged crime with one of the officers. At the hospital she was examined by a doctor. Testifying from a hospital "emergency record," the doctor stated that vaginal smears proved positive for the presence of seminal fluid containing sperm. A scratch on her neck was discovered. He stated that it could have been caused by a knife. The doctor could not recall and the record did not indicate whether she was menstruating.

The defendant's landlord testified that he saw the defendant at his residence in Murphysboro between 6 and 6:30 and again between 6:30

and 7:00 on the evening in question. The defendant testified that he loaned one John Allen his car at about 6:30. He said he had known Allen for about a month. He described Allen as somewhat taller and heavier than himself, with long sideburns and a moustache, and "gold in his mouth." When Allen returned the car at 7:30, the defendant noticed that his license applied for sticker was missing. Jones gave a description of Allen to the police following his arrest, but Allen could not be found. He told them that he believed that Allen had since gone to Chicago. The defendant drove to the home of his girl friend, arriving at about 7:30 and then went out for the evening. She confirmed his testimony with regard to his activities after 7:30. She said she noticed that his sticker was missing when the defendant called this to her attention. The defendant said that he had allowed his car and residence to be searched and denied committing the offense.

On cross-examination, the assistant State's attorney asked the defendant whether he had ever been convicted of a felony. The defendant answered affirmatively, and his counsel then objected and asked that the answer be stricken. The objection was overruled. The prosecutor then asked, over defense counsel's objection, when the defendant had been convicted and for what offense. The defendant responded that he had been convicted of grand theft in 1969. The assistant State's attorney later introduced into evidence, over defendant's objection, a "Mittimus For State Penal Institutions" signed by the judge who sentenced the defendant and by the clerk of the circuit court. The defendant moved for a mistrial, but the motion was denied.

■■■ The defendant first contends that he was not proven guilty beyond a reasonable doubt, because the State did not prove that the intercourse occurred by force and against the will of the prosecutrix. While the evidence in a rape prosecution must prove that the act was against the will of the victim, there is no definite standard for determining the amount of resistance required. Such a determination must be made from the fact and circumstances of each case. (*People v. Faulisi*, 25 Ill.2d 457, 185 N.E.2d 211; *People v. Smith*, 8 Ill.App.3d 36, 288 N.E.2d 694.) When the victim retains the power to resist, voluntary submission, no matter how reluctantly yielded, constitutes consent. (*People v. Rossilille*, 24 Ill.2d 341, 181 N.E.2d 114; *People v. Strong*, 120 Ill. App.2d 52, 256 N.E.2d 76.) Resistance is not necessary, however, under circumstances where resistance would be futile and would endanger the life of the victim or where the victim is overcome by superior strength or paralyzed by fear. (*People v. Clarke*, 50 Ill.2d 104, 277 N.E.2d 866; *People v. Smith*, 32 Ill.2d 88, 203 N.E.2d 879; *People v. Faulisi*.) Where

a victim's resistance would be useless and could endanger her life, the fact that the victim removes her own clothes and does not resist does not indicate the voluntary submission necessary to constitute consent. (*People v. Griggs*, 131 Ill.App.2d 257, 266 N.E.2d 398; *People v. Strong*; *People v. Scott*, 82 Ill.App.2d 109, 227 N.E.2d ·72.) Testimony of the complaining witness in a rape prosecution is sufficient to support a conviction if it is clear and convincing; otherwise, the testimony must be corroborated. (*People v. White*, 26 Ill.2d 199, 186 N.E.2d 351.) In our opinion, the evidence in this case was sufficient for the jury to find the defendant guilty beyond a reasonable doubt.

■■ The defendant next contends that the court erred when it accepted People's Instruction No. 8. The instruction, not found in Illinois Pattern Jury Instructions, read as follows:

> "An act of resistance, when futile, is unnecessary to sustain a conviction of rape. A victim need not actively resist where it appears that a reasonable person, under the circumstances, would have feared that failure to comply with the defendant's request would result either in death or serious injury. There is no requirement in the law that when an attempt is made to rape a woman she must subject herself to possible serious harm."

Supreme Court Rule 451 (Ill. Rev. Stat. 1973, ch. 110A, par. 451) provides:

> "(a) Use of IPI-Criminal Instructions; Requirements of Other Instructions. Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument."

In our opinion, the IPI Instructions 9.01, 9.02 and 9.03 given on behalf of the State accurately stated the law. In the event this case is retried, Instruction No. 8 should not be given.

The defendant next contends that the court erred in allowing the State's attorney, over the objections of defense counsel, to cross-examine the defendant about his prior conviction, and to introduce the mittimus into evidence. In *People v. Madison*, 56 Ill.2d 476, 309 N.E.2d 11, the defendant admitted on cross-examination that he had been convicted of a felony, and the State also introduced into evidence an authenticated copy

of the record of the conviction. The court held that cross-examination of a defendant concerning a former conviction is improper because of the prejudice it may cause in a jury trial. The court, however, went on to hold that the error was harmless because the presentation of the prior conviction by cross-examination had not deprived defendant of substantial justice or influenced the determination of guilt. (*People v. Morehead*, 45 Ill.2d 326, 259 N.E.2d 8, *cert. denied*, 400 U.S. 945, 27 L.Ed.2d 251, 91 S.Ct. 251.) The defendant's confession and substantial circumstantial evidence clearly established the defendant's guilt. In the present case, although it appears likely that a rape did occur, there was some question whether the defendant committed the act. The prosecutrix testified that her attacker was in his thirties, while the defendant was actually 54.

The defendant also contends that the mittimus of the defendant's prior conviction was not a proper record of conviction or authenticated copy thereof for impeachment purposes. We agree. *Bartholomew v. People*, 104 Ill. 601, 44 Am. R. 97; *Kirby v. People*, 123 Ill. 436, 15 N.E. 33; *People v. Andrae*, 295 Ill. 445, 129 N.E. 178; *People v. Novak*, 343 Ill. 355, 175 N.E. 551; *People v. Halkens*, 386 Ill. 167, 53 N.E.2d 923; *People v. Lane*, 400 Ill. 170, 79 N.E.2d 65; *People v. Wheeler*, 5 Ill.2d 474, 126 N.E.2d 228.

■■■ The defendant argues that the doctor who testified about the examination of the prosecutrix at the hospital did so on the basis of unauthenticated hospital records. His testimony was admitted as proof of the matter asserted therein, therefore inadmissible hearsay. In addition, the deputy sheriff who accompanied the prosecutrix to the scene of the crime testified, on direct examination as part of the State's case, about the route the defendant had taken, the scene of the crime and incidental matters, all on the basis of what the prosecutrix had told him. While the trial court felt that the officer could testify as to where he had been with her, our examination of the record leads us to conclude that the testimony was clearly offered to prove that the prosecutrix could retrace the route she and her assailant had taken and was, therefore, hearsay. The testimony of both witnesses was allowed over defense counsel's strenuous objection. A doctors' testimony based upon unauthenticated hospital records is inadmissible hearsay. (*People v. Brown*, 31 Ill.2d 415, 201 N.E.2d 409, *People v. Williams* 337 Ill. 371, 169 N.E. 190.) With regard to the testimony of the deputy sheriff, we note the rule that assertive conduct as well as verbal statements may be inadmissible hearsay (*People v. Higgs*, 11 Ill.App.3d 1032, 298 N.E.2d 283), and that where the information of a witness is entirely based on information given by another, it is inadmissible hearsay. (*People v. Turner*, 91 Ill.App.2d 436, 235 N.E.2d 317.) The testimony of the deputy sheriff was hearsay whether

viewed as offered to prove where the officer had been or offered to prove the truth of the matter stated. The testimony of both witnesses, especially that of the physician, was vital and was prejudicial to the defendant.

For the foregoing reasons, the judgment of the circuit court is reversed and this cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER and CARTER, JJ., concur.