THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BILLY J. PRESTON, Defendant-Appellant.

Fourth District   No. 14735

Opinion filed July 7, 1978.

CRAVEN, J., dissenting.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Adams County, defendant Billy J. Preston was convicted of the offenses of aggravated assault and unlawful use of weapons and sentenced to 3 1/3 to 10 years' imprisonment. On appeal he contends that his guilt was not proved beyond a reasonable doubt and that the court erred in: (1) failing to *sua sponte* give an instruction to the jury that informed the jury of all of the elements of the offense, (2) refusing defendant's instruction with reference to circumstantial evidence, and (3) permitting impeachment of defendant by evidence of a stale conviction.

The evidence showed that at about 1:30 a.m. on July 28, 1977, defendant was leaving a nightclub in Quincy known as Cannon's. As he left he had an altercation with Jim Marshall. Defendant testified that as he left, Marshall grabbed him by a sore arm whereupon he, defendant, left walking north and then east down an alley. Marshall testified that he bumped into defendant and then defendant pointed a handgun at him causing him to fear defendant would shoot him. Gary Parrish, a police officer, testified that he saw some pushing and shoving in front of Cannon's and then saw defendant run north from Cannon's and then east down an alley. The officer chased defendant. The evidence was undisputed that while defendant was in the alley, a shot was fired. Defendant denied firing the shot and denied possession of a gun at any time in question. Officer Parrish, who was then at the entrance to the alley, testified that he could not tell if defendant fired the shot. The officer did say that no one else was in the alley at the time.

The evidence of subsequent events was undisputed. Defendant turned left and ran in a northerly direction. The officer saw defendant again as he ran across a street into a park. The officer ordered defendant to stop and defendant did so. The officer arrested defendant, handcuffed him and searched him finding no weapon on him. Meanwhile a garbage truck passed through the alley, after which another police officer searched the alley and found a pistol in the alley near a trash barrel. A shell casing was

found 17 feet south of the pistol and a projectile was also found in the alley. A State's expert criminalist testified that in his opinion, the shell casing and the projectile had been fired from the pistol.

Section 24—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)) states in part:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(10) Carries or possesses in a vehicle or on or about his person within the corporate limits of a city, village or incorporated town, except when on his land or in his own abode or fixed place of business, any loaded pistol, revolver or other firearm."

Section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)) states in part:

"A person commits an aggravated assault, when, in committing an assault, he:

(1) Uses a deadly weapon."

Defendant's contention that the evidence failed to support the verdict is based upon his theory that the evidence of the possession of the pistol was too weak and that no evidence was presented to negate the statutory exception to the offense of illegal possession of a dangerous weapon that the offense does not occur if the possession takes place on the accused's "own land or in his own abode or fixed place of business."

Defendant emphasizes that Marshall's testimony was the only direct evidence that defendant possessed the pistol. Although Marshall claimed to have drunk only a few beers, two customers testified to his having been rowdy earlier at a bar at the St. Jude Hotel. Marshall was unable to remember having been in that establishment with others and having looked for a person named Ray Ellis as those witnesses claimed. He was also unable to describe in detail the occurrence where the defendant pointed the pistol at him. Officer Parrish and another officer who saw part of the scuffle between defendant and Marshall did not see defendant have a gun in his possession. The evidence indicated that the officers were across the street from Cannon's and although they used a searchlight, they would not necessarily have seen a pistol, had defendant pointed one at Marshall.

■■ The issue thus was a question of comparing the credibility of Marshall against that of the defendant; a matter in which the jury's determination is entitled to great weight (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170, *cert. denied* (1969), 395 U.S. 966, 89 S. Ct. 2112, 23 L. Ed. 2d 752). The existence of a discharged pistol in the alley shortly after defendant left and the evidence of defendant's flight are circumstances corroborating Marshall's testimony. The evidence was sufficient for the

jury to find beyond a reasonable doubt that defendant had possessed a loaded pistol at the time in question.

■■ It was a material element of the charge of unlawful use of weapons that the possession occurred while defendant was not ' "on his own land or in his own abode or fixed place of business.' " (*People v. Chmilenko* (1976), 44 Ill. App. 3d 1060, 1062, 358 N.E.2d 1247.) The confrontation with Marshall took place in the entryway of Cannon's and then defendant walked down a public sidewalk and then down an alley. Circumstantial evidence indicated that he fired the pistol in the alley and threw it down, thus possessing the gun while on public land. Furthermore, he testified that he was a construction worker who lived at the St. Jude Hotel. When asked his occupation, his answer did not indicate any activity that would make Cannon's his place of business and he testified that he went there to meet a lady friend.

The evidence was sufficient for the jury to determine beyond a reasonable doubt that defendant knowingly possessed a loaded revolver in a place not excepted by the statute and that he pointed the loaded revolver at Marshall putting him in reasonable fear of receiving a battery.

■■ Neither side tendered an instruction informing the jury that the State was required to negate the exceptions of the statute as to the places where the possession of the weapon would not constitute the offense and the court did not on its own motion give such an instruction. The failure of the court to *sua sponte* instruct the jury as to the necessary elements of the offense is reversible error only if the failure to do so affects the substantial rights of the accused. (*People v. Grant* (1977), 68 Ill. 2d 1, 368 N.E.2d 909; 58 Ill. 2d R. 615(a).) Here the evidence was strong and uncontroverted that the possession did not occur on excepted premises. No substantial rights of defendant were affected and no reversible error occurred.

■■ Defendant's tendered instruction on circumstantial evidence was in the form of IPI Criminal No. 3.02 including the second paragraph telling the jury not to convict "unless the facts and circumstances proved excluded every reasonable theory of innocence." The Committee Note to that instruction states that the second paragraph is not to be given unless the proof of the defendant's guilt is "entirely circumstantial" (IPI Criminal No. 3.02, Committed Note, at 21 (1968)). Here the testimony of Marshall was direct evidence. The court properly refused the instruction in the form tendered.

The most serious question in the case arose out of the cross-examination of the defendant. The prosecutor asked the defendant about a 1972 armed robbery conviction. The following exchange then occurred:

"Q. And of course this November of '72 that wasn't the first time you were in the penitentiary for a felony, was it?

A. No, it wasn't.

Q. Prior to November of '72, when was the time further back?

A. 1961.

Q. '61, what was that for?

A. For burglary.

Q. I have no further questions of the witness."

Subsequently during the conference on instructions, the trial judge called defense counsel's attention to the question of whether the defendant's 1961 conviction was too old to be used for impeachment. The defense counsel responded, "I would offer that in argument, Your Honor, but not wish to be heard." The judge responded that he thought there was some law on the question and advised counsel to research the law and be prepared to argue the law the next morning. The record does not indicate that any further hearing on the question was held. In his closing argument, the prosecutor referred to the 1961 conviction as impeaching defendant's credibility and the defense responded in its argument by asking the jurors to put that conviction out of their minds.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the supreme court ruled that trial courts should follow the recommendation of proposed Federal Rule 609 which prohibited the impeachment of a witness (including a criminal defendant testifying in his own behalf) by use of a conviction if more than 10 years had elapsed since the conviction or release of the witness from confinement whichever was later. Although the proposed rule was changed before adoption, the supreme court held in *People v. Ray* (1973), 54 Ill. 2d 377, 297 N.E.2d 168, that the rule as proposed rather than as adopted should be applied by the courts of this State.

*Montgomery* also set forth the rule that before admitting evidence of any prior conviction for impeachment purposes, the trial court is required to weigh the probative value of the conviction as impeachment against its prejudice to the defendant as tending to indicate to the jury that the defendant has a propensity toward crime as well as a lack of veracity. Even if the conviction is timely, the trial judge is not required to admit the conviction if he determines that the prejudice outweighs the probative value for impeachment.

Under a series of cases culminating in *People v. Jones* (1975), 28 Ill. App. 3d 896, 329 N.E.2d 855, the courts of this State have held that an accused who testifies in his own behalf may be impeached by a prior conviction only by the record of that conviction or an authenticated copy thereof.

Here, no evidence was presented to show that the defendant had been in confinement for the 1961 conviction within 10 years prior to trial. Because the trial judge was never required to rule on the admissibility of the 1961 conviction, the record gives no indication that he performed the balancing test. Evidence of the 1961 conviction was presented only by cross-examination.

■■■ However, none of the foregoing issues were raised at trial except as we have shown. None were raised in a post-trial motion. When not raised in such a motion, claims of error are waived unless substantial justice requires otherwise (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856). Any error in the use of cross-examination to prove the prior conviction of the accused is waived if not raised at the time of the elicitation of the information (*People v. McCrimmon* (1967), 37 Ill. 2d 40, 224 N.E.2d 822, *cert. denied* (1967), 389 U.S. 863, 19 L. Ed. 2d 131, 88 S. Ct. 120). Although defense counsel made an "objection" to the use of the 1961 conviction during the instruction conference, there was nothing then before the court for it to rule on. Had a motion to strike the evidence been made or an objection to the discussion of the conviction in closing argument, then the court would have been in a position to make a ruling. After the court had advised defense counsel of this issue and he took no timely action, the trial judge could have assumed that defense counsel did not wish to pursue the question.

Defense counsel may not have wanted to pursue the matter for the information presented at sentencing indicated that defendant may well have been incarcerated for that offense within the last 10 years and the placing of further foundation evidence before the jury would not have been in the defendant's best interests. In any event, because no timely objection was ever made, the prosecution was not put in a position to be required to show a foundation for using proof of the conviction and the trial judge was never placed in a position to perform the balancing test. It would have been rather difficult for the court to have stopped the closing argument without request from the defendant and to have made a determination at that time as to whether the prejudice outweighed the probative value of the 1961 conviction evidence.

We also note that the evidence of the 1961 conviction was merely cumulative to evidence of a 1972 conviction for the crime of armed robbery. Thus, because the jury already properly knew of defendant's conviction for the more violent crime of armed robbery, the additional prejudice from the jury's knowledge of the 1961 conviction for burglary would be greatly mitigated. For this reason and the other reasons stated, we conclude that substantial justice does not require that we now consider the questions raised by the use of the defendant's 1961 conviction.

Finding the evidence sufficient to support the verdicts and no reversible error to have occurred, we affirm.


Affirmed.


MILLS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The majority by its opinion concludes that the erroneous admission of a 1961 conviction was merely cumulative to evidence of a 1972 conviction for the crime of armed robbery and that the error was, therefore, harmless. The whole area of use of prior convictions to impeach, when the conviction itself tends to establish nothing with reference to truth and veracity, but rather suggests a continuing criminal propensity, was subject to a scholarly discussion in *People v. Montgomery* (1971), 47 Ill. 2d 510, 514, 268 N.E.2d 695, 697. There, Mr. Justice Schaefer quoted the trial court judge as saying:

" 'The defendant is a dead duck once he is on trial before a jury and you present a record that he was convicted * * * twenty-five years ago * * *. If it's any way close, the jury is going to hang him on that record, not on the evidence.' "

Justice Schaefer then quoted the same expression of disbelief from an article by Dean Griswold in which it was said:

" 'We accept much self-deception on this. We say that the evidence of the prior conviction is admissible only to impeach the defendant's testimony, and not as evidence of the prior crimes themselves. Juries are solemnly instructed to this effect. Is there anyone who doubts what the effect of this evidence in fact is on the jury? If we know so clearly what we are actually doing, why do we pretend that we are not doing what we clearly are doing?' " 47 Ill. 2d 510, 514, 268 N.E.2d 695, 697-98.

As I view this record, a 1972 conviction was used for purposes of impeachment, although there was no determination that the conviction of armed robbery then in any way related to truth and veracity now, nor was there a balancing test. The 1961 conviction was submitted to and considered by the jury and, indeed argued to the jury, notwithstanding the absence of a showing that it even *could* be considered even if it met the tests of *Montgomery*. It is fair to ask, if any of us doubt the effect of this kind of evidence upon the jury, whether the defendant was convicted upon the theory that having committed two prior offenses, he probably committed this one. Perhaps—but he should be convicted solely upon evidence of guilty and not upon the basis of his prior convictions.